IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TROY and JENNIFER DAVIS, and JILL U. TILLMAN,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN and ERIN GRUBB and ORLEANS HOMEBUILDERS, INC.,<br><br>Defendants. | CIVIL ACTION<br>NO. 12-4628<br><br>FILED<br>MAY 2 3 2013<br>MICHAEL E. KUNZ, Clerk<br>By_____Dep. Clerk |
| ALLSTATE INSURANCE COMPANY a/s/o TROY and JENNIFER DAVIS,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN and ERIN GRUBB and ORLEANS HOMEBUILDERS, INC.,<br><br>Defendants. | CIVIL ACTION<br>NO. 12-6747 – File |

**OPINION**

Slomsky, J.                                         May 23, 2013

**I.   INTRODUCTION**

This case arises out of a dispute over property damage. Plaintiffs Troy and Jennifer Davis and Jill U. Tillman filed an action against Defendants Brian and Erin Grubb and Stock Grange, L.P.[1] in the Court of Common Pleas of Chester County. A second action was filed by

---

[1] The parties agree that Stock Grange, L.P. is incorrectly named in this suit as Orleans Homebuilders, Inc. (Hr'g Tr. 7-8, Nov. 07, 2012.) Stock Grange, L.P. is a subsidiary of Orleans Homebuilders, Inc. (*Id.*) Accordingly, the Court will refer to named Defendant Orleans Homebuilders, Inc. as "Stock Grange" in this Opinion.

Allstate Insurance Company ("Allstate") as subrogee of the Davises against the Grubbs and Stock Grange in the Court of Common Pleas of Chester County. Plaintiffs in both actions seek damages for property loss caused by two separate floods. The Complaint alleges that work on the Grubbs' property by homebuilder Stock Grange was performed negligently, which allowed the two floods to damage the property.

The cases were removed to this Court under federal question jurisdiction because the claims against Stock Grange implicate an interpretation of the Bankruptcy Code. United States District Courts have original but not exclusive jurisdiction over interpretation of the Bankruptcy Code pursuant to 28 U.S.C. § 1334(b).[2] This Court granted an unopposed Motion to Consolidate the two cases because the interpretation involves common questions of law and fact. (Doc. No. 23.)[3] The matter of interpretation was raised in Plaintiffs' Motions to Remand both cases to state court. These Motions are now before the Court for disposition.[4]

---

[2] Under 28 U.S.C. § 1334(b), a United States District Court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The Bankruptcy Code is found in Title 11.

[3] All document numbers referred to in this Opinion are from Case No. 12-4628 unless otherwise specified.

[4] Separate Motions to Remand were filed in each case (Case No. 12-4628, Doc. No. 6; Case No. 12-6747, Doc. No. 7.) These Motions address the same issues and, as noted, the two cases have been consolidated since the filing of these Motions. Thus, the Motions are dealt with jointly in this Opinion.

In reaching a decision, the Court has considered the following documents in Case No. 12-4628: Doc. Nos. 6, 7, 8, 10, 13, 15, 17, 19 and 20. The Court has also considered the following documents in Case No. 12-6747: Doc. Nos. 7 and 10, and the arguments of counsel at the November 7, 2012 hearing.

Plaintiffs seek to remand this case to state court, arguing: 1) the case was improperly removed to federal court under 28 U.S.C. §1441(a)[5] because the claims here are for negligence and breach of warranty, both state law claims; and 2) the claims are viable because they arose after the Bankruptcy Court approved a Second Amended Joint Plan of Reorganization for Stock Grange (hereafter "Plan"), which only discharged all prior claims. Conversely, Defendant Stock Grange submits that: 1) this Court should retain jurisdiction in order to interpret the Bankruptcy Code and determine whether Plaintiffs' claims were discharged in bankruptcy; and 2) Plaintiffs' claims against Stock Grange arose before the date of approval of the Plan and therefore were discharged in bankruptcy.

At the November 7, 2012 hearing, counsel for both parties agreed that after this Court resolves the bankruptcy issue, this case should be remanded to state court for adjudication of the common law claims. (Hr'g Tr., 11-13 Nov. 07, 2012.) For reasons that follow, this Court will find that Plaintiffs' claims were discharged in the bankruptcy proceeding filed by Stock Grange. The Court will also grant the Motions to Remand this case to state court.

## II. FACTUAL BACKGROUND

In February 2008, Plaintiffs purchased a residential property located at 1348 Brownsville Drive, Coatesville, Pennsylvania from Defendant Stock Grange. It was covered by a five year warranty on drainage, which guaranteed that groundwater would be diverted away from the residence. (Doc. No. 17 at 2 n.1.) The Grubbs own the property adjacent to Plaintiffs' property. The Grubbs' property sits on a hill above Plaintiffs' property. (Doc. No. 1 at 17.)

---

[5] 28 U.S.C. §1441(a) provides: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

On March 1, 2010, Stock Grange filed a petition under Chapter 11 of the Bankruptcy Code. (Id. at 10.) On October 19, 2010, Stock Grange gave public notice of the bankruptcy in USA Today. (Doc. No. 19 at 13.) On December 1, 2010, the United States Bankruptcy Court for the District of Delaware confirmed the Plan. (Doc. No. 1 at 17; Doc. No. 6 at 6-7.) The Plan lists February 14, 2011 as the effective date of release of all prior claims against Stock Grange. (Doc. No. 6 at 6-7.) Plaintiffs allege that on August 28 and September 7, 2011, the contents of their home were damaged when rain fell on the Grubbs' property and "ran in a torrent down the hill" to their property. (Doc. No. 1 at 17.)

On May 24, 2012, Plaintiffs filed the action against the Grubbs and Stock Grange in the Chester County Court of Common Pleas (captioned Troy and Jennifer Davis and Jill U. Tillman v. Brian and Erin Grubb and Orleans Homebuilders,Inc., No. 12-05265) (the "Davis case"). Plaintiffs made trespass and nuisance claims of action against the Grubbs and negligence and breach of warranty claims against Stock Grange. On August 14, 2012, Defendant Stock Grange removed the case to this Court, alleging that federal question jurisdiction existed because of the bankruptcy question. On September 7, 2012, Plaintiff filed the Motion to Remand, which is before the Court. (Doc. No. 6.)

On October 26, 2012, Allstate, as subrogee of Plaintiffs, filed a complaint against Grubb and Stock Grange in the Court of Common Pleas of Chester County (captioned Allstate Insurance Company a/s/o Troy and Jennifer Davis v. Brian and Erin Grubb and Orleans Homebuilders, Inc., No. 12-11416) (the "Allstate case"). Allstate made negligence and trespass claims against the Grubbs and negligence and breach of warranty claims against Stock Grange. (Doc. No. 1 of Case No. 12-6747.) On December 3, 2012, Defendant Stock Grange removed the case to this Court, again alleging federal question jurisdiction because of the bankruptcy

question. On December 28, 2012, Allstate filed the second Motion to Remand, which is also before the Court. (Doc. No. 7 of Case No. 12-6747.)

On January 4, 2013, Stock Grange filed a Motion to Consolidate the Davis case and the Allstate case. (Doc. No. 21.) On March 25, 2013, this Court granted the unopposed Motion to Consolidate the cases because, as noted previously, they involve common matters.

## III. STANDARD OF REVIEW

A defendant may remove a civil action from state court to federal court if the case could have been originally brought in the federal forum. 28 U.S.C. § 1441(a). A United States District Court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

A case removed to federal court may be remanded to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction. . . ." 28 U.S.C. § 1447(c). Removal statutes should be strictly construed "against removal and all doubts should be resolved in favor of remand." Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir.1992) (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)). With this law in mind, the Court will now turn to the issues to be decided here.

## IV. ANALYSIS

### A. Interpretation of the Bankruptcy Code

Under the Bankruptcy Code, the term "claim" is defined, in relevant part, as:

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. . . .

11 U.S.C. § 101(5)(A). The Supreme Court has noted that the meaning of the word "claim" has "the broadest available definition." FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 302 (2003) (internal citation and quotations omitted). "Principal among the effects of the

determination when a claim arises is the effect on the dischargeability of a claim." Grossman's Inc. v. Van Brunt, 607 F.3d 114, 122 (3d Cir. 2010). Under 11 U.S.C. § 1141(d)(1)(A), the confirmation of a plan of reorganization "discharges the debtor from any debt that arose before the date of such confirmation." A "debt" is defined as "a liability on a claim." 11 U.S.C. § 101(12). In Grossman, the court explained the competing interests arising under the Bankruptcy Code as follows:

> [Congress' intent in the Bankruptcy Code was] to provide debtors with a fresh start, an objective . . . made more feasible by maximizing the scope of a discharge. On the other hand, a broad discharge may disadvantage potential claimants, such as tort claimants, whose injuries were allegedly caused by the debtor but which have not yet manifested and who therefore had no reason to file claims in the bankruptcy. These competing considerations have not been resolved consistently by the cases decided to date.
>
> Moreover, the determination when a claim arises has significant due process implications. If potential future tort claimants have not filed claims because they are unaware of their injuries, they might challenge the effectiveness of any purported notice of the claims bar date. Discharge of such claims without providing adequate notice raises questions under the Fourteenth Amendment.

607 F.3d at 122 (quotations and citations omitted).

In analyzing whether Plaintiffs' claims were discharged in Stock Grange's bankruptcy proceeding, this Court must: 1) apply the Bankruptcy Code's definition of "claim" to determine if Plaintiffs had viable claims that could be discharged under the Bankruptcy Code; and 2) address whether Plaintiffs received adequate notice to allow for the discharge of the claims.

### 1. Plaintiffs Had Claims Under the Bankruptcy Code

In determining whether Plaintiffs had viable claims under the Bankruptcy Code, this Court must weigh "the Bankruptcy Code's goal of providing a debtor with a fresh start by resolving all claims arising from the debtor's conduct prior to its emergence from bankruptcy; and the rights of individuals who may be damaged by that conduct but are unaware of the potential harm at the time of the debtor's bankruptcy." Wright v. Owens Corning, 679 F.3d 1010

(3d Cir. 2012). In balancing these interests, the Court finds instructive two opinions of the Court of Appeals for the Third Circuit.

First, in Grossman's Inc. v. Van Brunt, 607 F.3d 114 (3d Cir. 2010), the Third Circuit considered whether claims for personal injury in a mass tort asbestos case were discharged in the bankruptcy proceeding of a retailer that sold the asbestos-containing products. One plaintiff in Grossman, Mary Van Brunt, remodeled her home in 1977 using products allegedly containing asbestos that she purchased from a home improvement and lumber retailer. Id. at 117. In 1997, the retailer filed for bankruptcy under Chapter 11 of the Bankruptcy Code, notice of the bankruptcy proceeding was provided by publication, and the Plan of Reorganization was confirmed. Id. Van Brunt did not file a proof of claim before the confirmation of the Plan of Reorganization. In 2006, nearly ten years later, Van Brunt had symptoms of mesothelioma, a cancer linked to asbestos exposure. In 2007, she was diagnosed with cancer. Id.

Thereafter, Van Brunt filed an action alleging tort and breach of warranty claims against the retailer's successor-in-interest and the manufacturers of the products. Id. at 118. The Bankruptcy Court held the retailer's 1997 Plan of Reorganization did not discharge Van Brunt's asbestos-related claims because the claims arose after the effective date of the plan. Id. The District Court affirmed the Bankruptcy Court's decision in every respect except one, finding that the breach of warranty claim was discharged in bankruptcy. Id. The retailer's successor-in-interest appealed the affirmance of the District Court, asserting that the tort claims were not "claims" within the meaning of 11 U.S.C. § 101(5) of the Bankruptcy Code. The Third Circuit found that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy

7

Code." Id. at 125. The court therefore held that Van Brunt's claims arose in 1977 when she was exposed to asbestos. Id.

Second, the Third Circuit applied Grossman in Wright v. Owens Corning, 679 F.3d 101 (3d Cir. 2012), a case involving warranty claims asserted by a putative class which purchased defective roofing shingles. In Wright, two homeowners sued manufacturer Owens Corning for damage caused by the allegedly defective shingles installed in 1998 or early 1999 and 2005, respectively. In 2009, both Plaintiffs discovered roof leaks and asserted warranty claims for defective shingles against Owens Corning. Owens Corning had filed, however, a petition under Chapter 11 of the Bankruptcy Code in October 2000. April 15, 2002 was established as the cutoff date for all claims. Any claim submitted after that date was barred. A bar date notice was published twice in The New York Times, The Wall Street Journal, and USA Today. A Reorganization Plan was filed in June 2006 and notice of the confirmation hearing was published in The New York Times, The Wall Street Journal, and USA Today. In September 2006, the Reorganization Plan was confirmed.

In analyzing whether plaintiffs held viable claims under the Bankruptcy Code, the court in Wright found that the exposure of the plaintiff, in purchasing and installing the shingles in late 1998 or early 1999, predated the bankruptcy petition of Owens Corning. The Third Circuit therefore "easily conclude[d] that Wright held a claim" under the Bankruptcy Code. Id. at 107. The court also noted that whether the plaintiff who installed shingles in 2005 had a claim was less clear because he purchased the shingles after the bankruptcy petition was filed and the claims bar date, but before the confirmation of the bankruptcy plan. The court in Wright expanded the Grossman interpretation of when a claim arises and held that "a claim arises when an individual is exposed *pre-confirmation* to a product or other conduct giving rise to injury."

8

Id. (emphasis in original). Accordingly, the Third Circuit held that both plaintiffs in Wright held claims under the Bankruptcy Code.

In this case, Plaintiffs purchased the residential property with a warranty before the bankruptcy petition was filed, the Plan was confirmed, and all claims released. Thereafter, the residence was damaged by rain. As noted previously, Defendants argue that Plaintiffs' claims were discharged in the bankruptcy proceeding because their claim arose pre-petition, noting that they bought their house with the warranty before Stock Grange's bankruptcy petition was filed. Conversely, Plaintiffs contend that their claims are not discharged by Stock Grange's bankruptcy filing because they did not suffer an injury, in the form of property damage, until after the confirmation of the Plan and the effective date of release of all prior claims against Stock Grange.

As noted earlier, Grossman held that a claim arises for purposes of the Bankruptcy Code when the individual is exposed to a product before a bankruptcy petition. Whether Plaintiffs in this case hold claims under the Bankruptcy Code therefore depends on whether this Court finds Plaintiffs were exposed to the defective workmanship at the time they purchased the property pre-petition or at the time the property was damaged post-petition. Wright is instructive in making this decision because it also involves a defective product, roofing shingles.

The timeline in the instant case is similar to the timeline in Wright, where the plaintiffs purchased the defective shingles prior to the bankruptcy's inception, but were injured after the bankruptcy concluded. Similarly, in this case Plaintiffs purchased the house with the warranty before Defendants' bankruptcy filing, but suffered a loss after the bankruptcy concluded when floods caused the property damage. The Third Circuit in Wright found that Plaintiffs held claims under the Bankruptcy Code because the exposure existed before the confirmation of the plan.

9

Here, Plaintiffs also hold viable claims under the Bankruptcy Code, which are potentially dischargeable, because they purchased their home before Stock Grange's bankruptcy petition was filed. Although there was a five year warranty on the home, it would not save Plaintiffs from discharge because the warranty would only be effective if the claim was not discharged.

### 2. Plaintiffs Received Adequate Notice of the Bankruptcy Proceeding

Even though Plaintiffs in this case hold claims under the Bankruptcy Code, which may be discharged, Grossman and Wright require a District Court to decide whether the discharge of these claims would comport with fundamental principles of due process. "Discharge of the claims of future unknown claimants raises questions regarding due process." Wright, 679 F.3d at 107. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Therefore, "[i]nadequate notice is a defect which precludes discharge of a claim in bankruptcy." Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995).

The court in Grossman considered whether the discharge would comport with fundamental due process regarding notice. The court held that whether adequate notice has been given "depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court." Grossman, 607 F.3d at 127. Because the Third Circuit remanded Grossman to the district court to consider whether the claim was discharged by the plan of reorganization, the Court of Appeals provided further guidance by setting out six factors to consider in determining whether a claim has been discharged:

> . . . [T]he court may wish to consider, inter alia, the circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their

10

vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g).

Id. at 127-28.[6] The Grossman factors are applicable to the claims made in this case and will now be considered.

The first Grossman factor to consider is the circumstances of the initial exposure. As discussed previously, Plaintiffs here were exposed to the defective workmanship upon purchasing their home in February 2008, which predates Stock Grange's bankruptcy filing in March 2010. As such, the notice of Defendants' bankruptcy, which was published in the newspaper subsequent to Plaintiff's initial exposure, weighs in favor of finding that Plaintiffs received adequate notice and that their claims should be discharged.

The second factor is whether and/or when the claimants were aware of their vulnerability. Here, Plaintiffs were aware of their vulnerability when they purchased the warrantied property in February 2008 because the warranty was a five year guarantee against a vulnerability — drainage. Thus, Plaintiffs were aware of their vulnerability at the time Stock Grange published notice of the bankruptcy filing in USA Today. This factor therefore weighs in favor of a finding that Plaintiffs received adequate notice.

The third and fourth Grossman factors also weigh in favor of a finding that Plaintiffs received sufficient notice in this case. The third factor is whether the notice of the claims bar date came to the attention of Plaintiffs. The fourth factor is whether the

---

[6] These factors, when considered in their totality, ultimately concern two key issues discussed in this Opinion. The first is whether there was a viable claim under the Bankruptcy Code and the second is whether sufficient notice was given to satisfy due process requirements.

claimants were known or unknown creditors. "A 'known' creditor is one whose identity is either known or 'reasonably ascertainable by the debtor.'" Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995) (citation omitted). In Chemetron, the court explained:

> A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it."

Id. Unlike an "unknown" creditor, due process requires actual written notice of a bankruptcy proceeding to known creditors of the debtor. Id.

"An 'unknown' creditor is one whose 'interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'" Id. (citation omitted). Generally, notice by publication in national newspapers is sufficient to satisfy the notice requirements of due process for unknown claimants. Wright, 679 F.3d at 107-08.

However, the Court in Wright found that the general rule that notice by publication is sufficient to satisfy the due process rights of unknown claimants did not apply. The Wright court found that the plaintiffs were unknown creditors because they had warranties for the defective product. The court in Wright explained:

> Though the Debtors' notices [by publication] were sufficient as to most unknown claimants, the Plaintiffs' situation differed significantly from that of the typical unknown claimant. At the time the Plaintiffs received their notices, Frenville [v. Frenville, 744 F.2d 332 (3d Cir. 2010)] was the law in our Circuit (though we refrain from saying "good" law). As noted, under the Frenville test the Plaintiffs did not hold "claims" under the Bankruptcy Code. On reading the notices, the Plaintiffs could only understand that their rights would not be affected in any way by the referenced proceedings, and thus, correctly, would not have taken any action to ensure that their interests were represented. Not until we overturned Frenville and established our new test for determining when a claim exists under the Code did the Plaintiffs unexpectedly hold "claims" that arguably could be discharged in the proceedings addressed in the notices. By that time, however, the bar date had passed, the Confirmation Order had been entered, and the

12

> Confirmation Date had occurred, each of which affected the Plaintiffs' newfound claim status without an opportunity for them to be heard. Due process affords a re-do in these special situations to be sure all claimants have equal rights. We thus hold that, for persons who have "claims" under the Bankruptcy Code based solely on the retroactive effect of the rule announced in Grossman's, those claims are not discharged when the notice given to those persons was with the understanding that they did not hold claims.

Id. at 108. This case differs from Wright because the Frenville test does not apply to this case given that the Plan was confirmed after Grossman. As discussed above, under Grossman, Plaintiffs held claims under the Bankruptcy Code, and the general rule that unknown creditors may receive notice by publication applies.

In this case, Plaintiffs allege that they are known claimants because a careful examination of Defendants' records would reveal that Plaintiffs' had an interest in the bankruptcy proceeding based on their active warranty. (Doc. No. 20.) When Plaintiffs purchased the property in February 2008, it was covered by a five year residential warranty on drainage. This guaranteed the groundwater would be diverted properly. In August and September 2011, the property was damaged by rain. Stock Grange filed for bankruptcy in March 2010, and gave public notice of its bankruptcy filing in USA Today on October 19, 2010. The Plan in this case was confirmed in December 2010, and a February 2012 cut-off date for release of claims was set. The bankruptcy filing, confirmation of the Plan and cutoff date for release of claims were all within the five year warranty period. Under the circumstances, Plaintiffs assert that as known creditors they did not receive actual notice of Stock Grange's bankruptcy in violation of their due process rights. (Id.)

The Court disagrees. In this case Plaintiffs are unknown creditors who received adequate notice. Plaintiffs in this case were exposed to Stock Grange's conduct when they purchased their warrantied property, which was before Stock Grange filed for

13

bankruptcy. Under the precedent established in Grossman and Wright, Plaintiffs therefore were on notice through the publication of the bankruptcy in USA Today that they had a claim subject to discharge in a bankruptcy proceeding. This notice by publication complied with due process. Accordingly, since Plaintiffs were unknown creditors who received proper notice, the third and fourth Grossman factors weigh in favor of Defendants.

The fifth Grossman factor the court must consider is whether there was a colorable claim at the time of the bar date. Here, Plaintiffs did not have a colorable claim until their property flooded in August and September 2011. The damage incurred post-dates the bar date for claims set in Stock Grange's bankruptcy proceeding. This factor therefore weighs in favor of a finding that Plaintiffs did not receive adequate notice, which is a defect that may preclude discharge of the claim in bankruptcy.

Finally, this Court must consider the sixth factor which concerns other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as noted in Bankruptcy Code Section 524(g). This factor is neutral in this case, as no trust was established.

After weighing the above factors, the Court finds that four of the six Grossman factors, with one factor being neutral, warrant a finding that Plaintiffs' claims were discharged in bankruptcy. Accordingly, the claims are discharged and Stock Grange will be removed as a party in this action.

### B. Remand

Under 28 U.S.C. § 1447(c), a case removed to federal court may be remanded to state court if "at any time before final judgment it appears that the district court lacks subject matter

jurisdiction. . . ." This Court in the above analysis resolved the bankruptcy issue giving rise to Defendants' Notices of Removal to this Court. Thus, the Court no longer has subject matter jurisdiction over this case. Counsel for the parties agreed at the November 7, 2012 hearing that once this Court resolved the bankruptcy issue of whether the claim against Stock Grange is discharged, this matter should be remanded back to state court. (Hr'g Tr., 11-13, Nov. 07, 2012.) Accordingly, this case will be remanded to the Court of Common Pleas of Chester County.

## V. CONCLUSION

For the foregoing reasons, the claim against Defendant Stock Grange was discharged in bankruptcy. Accordingly, Stock Grange will be dismissed as a party in this case. Moreover, Plaintiff's Motions to Remand will be granted, and the case will be remanded to the Court of Common Pleas of Chester County. An appropriate Order follows.